# HEATH v. MANIRE.

## (*Nashville.*   December Term, 1904.)

1. **TURNPIKE COMPANIES. Provisions of Code confined to companies organized thereunder.**

   The provisions of the Code of 1858, chap. 2, entitled "Of Private Corporations," art. 1, entitled "Corporations for the Construction of Macadamized, Graded, Turnpike, Rail and Plank Roads," are confined in their operation to companies organized under that article.

   Code cited and construed:   Secs. 1400-1446 (1858).

2. **SAME. Same. Created by special act, not subject to limitations of the Code as to toll.**

   A turnpike company chartered by special act (1859-60, ch. 3) is not subject to the limitations upon the right to take toll contained in Code of 1858, sec. 1437, providing that "No toll shall be claimed or taken from any person passing from one part of his farm to another part thereof . . . or to or from a gristmill with grain for family use."

   Acts cited and construed:   1859-60 (Private), ch. 3; 1851-52, ch. 266, secs. 8-11; 1831, ch. 46; 1829 (Private), ch. 255.

   Code cited and construed: secs. 1436, 1437 (1858).

3. **SAME. Created by special act, not subject to provisions of subsequent general law.**

   Neither is such company governed by Acts 1875, chap. 142, sec. 7, providing that "No toll shall be demanded from persons passing from one to another part of his farm . . . or from persons going to or returning from a gristmill, on horseback, with grain for family use."

   Acts cited and construed:   1875, ch. 142, sec. 7.

Heath v. Manire.

4. **SAME. Cannot take toll from one going to mill on horse-back, when.**

A turnpike company, created by special act, that has complied with the requirements of sec. 2, ch. 369, Acts 1899, so as to obtain all the rights, powers and privileges conferred by the acts therein named, has thereby made the schedule of tolls provided for in Acts 1875, ch. 142, sec. 7, a part of its charter, and it cannot charge toll as against persons "going to, or returning from, a gristmill, on horseback, with grain for family use."

Acts cited and construed:  1899, ch. 369; 1875, ch. 142.

5. **SAME. May take toll from one going to mill on two-horse wagon.**

A turnpike company that is forbidden to take toll from persons "going to, or returning from, a gristmill, on horseback, with grain for family use," is not prohibited from charging toll as against one who is going to mill, on a two-horse wagon, with a load of grain to be ground for family use.

FROM RUTHERFORD.

Appeal in error from Circuit Court of Rutherford County.—W. C. HOUSTON, Judge.

R. S. BROWN, for Heath.

RICHARDSON & RICHARDSON, for Manire.

MR. CHIEF JUSTICE BEARD delivered the opinion of the Court.

This action was tried upon an agreed statement of facts.    The plaintiff in error is the tollgate keeper of

the Eagleville & Salem Turnpike Company, and he has brought this suit to recover a toll of fifteen cents and a penalty of $5, which he claimed had accrued to his company on account of the refusal of the defendant in error, Manire, to pay the toll demanded of him for passing through the tollgate with a two-horse wagon. The payment of this toll was declined upon the ground that Manire at the time was going with a load of grain to the mill where it was to be ground for family use. This contention was sustained by the circuit judge, who tried the case without the intervention of a jury, and the turnpike company, for whose use the suit is brought, asks now that this judgment be reversed.

The plaintiff in error was chartered in the year of 1859 by a special act of the legislature. The charter conferred upon it all the rights and privileges given to the Salem Turnpike Company, incorporated in 1851-52 (Acts 1851-52, p. 445, c. 266), and this latter company was clothed with all the rights granted to the Nashville, Murfreesboro & Shelbyville Turnpike Company, chartered in the year 1831, and that company was clothed with all the rights and privileges of the Nashville & Murfreesboro Turnpike Company, chartered in January, 1830.

By none of these charters was there a restriction or limitation upon the right of the company to charge toll for a wagon passing through a tollgate, loaded with grain which was being carried to a gristmill to be ground for family use. But it is insisted, in support of

the judgment of the court below, that this limitation or restriction is to be found in section 1437 of the Code of 1858, which was in operation at the time of the granting of the charter to plaintiff in error, and the argument is that under a well-recognized rule of construction this section became incorporated with the charter of the defendant in error, and formed a part and parcel of the same. Section 1436 fixed the amount of tolls that might be demanded of persons and property passing through the tollgate or tollgates of the corporation, provided for in the chapter, of which these two sections formed a part. The limitation upon the right granted in section 1436 and found in section 1437 is as follows: "But no toll shall be claimed or taken from any person passing from one part of his farm to another part thereof, . . . or to or from a gristmill with grain for family use."

If these two sections had been general in character, and there had been nothing further in the record, we would entertain no doubt that they became a part of the charter of the plaintiff in error, granted subsequent to their enactment, although no reference to them was made in the charter. But these sections were not general. Their operation, we think, was confined to the companies whose incorporation was contemplated and provided for in the chapter of the Code entitled "Of Private Corporations." Article 1 of this chapter is headed "Corporations for the Construction of Macadamized, Graded, Turnpike, Rail and Plank Roads," and

provides in its various sections the plan by which parties who desire to incorporate themselves for the purpose of building one or more of these roads may organize and accomplish their purpose without calling upon the legislature for a special charter.    We think it clear that the limitation imposed by section 1437 was to be applied to such corporations.    That the legislature had the right to grant a special charter, as was done in the case of the Eagleville & Salem Turnpike Company, and confer upon it extensive or restricted powers, without regard to the limitations imposed upon a company organized under the general act, cannot admit of question. We think that the legislature in the present case granted an unrestricted charter, and that there is no sound rule of construction which either requires or authorizes the courts to hold that it intended the limitation imposed upon a corporation called into being under a general act should be borne by this corporation, created by special charter.

So it is that the judgment of the court below, if to be maintained at all, must be rested upon some other ground.    It is insisted that such ground is to be found in certain other acts of the legislature, which will now be referred to.    In 1875 the legislature passed an act to provide for the organization of corporations, which is chapter 142, page 232, of the published acts of that year.    Section 7 of the act (page 240) provides for the incorporation of turnpike companies, and provides for rates of toll to be charged by such companies.    But it

was also provided by this section that "no toll shall be demanded from persons passing from one to another part of his farm . . . or from persons going to or returning from a gristmill, on horseback, with grain for family use." It will be seen in this provision that exemption to the party passing through a gate of the turnpike company is confined to one going to or returning from a gristmill, with grain for family use, on horseback. Under the Code of 1858, providing for this exemption in the case of turnpike companies organized under the general act, this exemption operated in favor of all persons who were on their way to or from a grist-mill, whether the grain was carried on horseback or in wagons, whereas in this latter act it is limited to such persons as were carrying their grain on horseback. We are unable to discover a reason for this variance, but we find that it exists, and, so existing, makes a material difference as to the rights of parties who claim the benefit of the exemption. Subsequently the legislature passed certain other acts affecting turnpike companies in this State, but as it made no modification in respect to the matter which is in controversy it is unnecessary to allude more particularly to them. It is apparent that this act of 1875 could have no effect upon the charter rights of this corporation, chartered many years prior thereto. In 1899, however, the legislature, realizing there was great diversity of burden and privileges between the turnpike companies of the State incorporated at different times, and many of them having spe-

Heath v. Manire.

cial charters, passed an act, which is chapter 369 of the session acts of that year, the avowed purpose of which was to bring about uniformity in the charters of turnpike companies, and uniformity in the required width and grade of the same, and to bring about a reduction of tolls charged on turnpikes chartered by acts of the general assembly. By section 1 of that act it was provided that all turnpike companies in the State, chartered by the legislature, might obtain all of the rights, powers, and privileges conferred on such companies under section 7, chapter 142, page 240, of the Acts of 1875, and certain other acts named in the section. But to obtain the advantage of these acts it was provided by section 2 that these companies should sign an agreement, through the majority of their board of directors, acknowledged before properly qualified officers, that they would not charge toll, among others, as against persons "going to or returning from a gristmill, on horseback, with grain for family use;" thus repeating the exact language of the exemption provided for such persons by the act of 1875. The company in question, through its board of directors, made the agreement required by the act of 1899, page 869, chapter 369, section 2, and in doing so made the schedule of tolls provided for in the former act a part of the charter under which it is now operating its road. The question, then, is, can one who is engaged in the carriage of grain to a gristmill to be ground for family use avail himself of this exemption, when, instead of using a horse for this

purpose, he sees proper to carry his grain in a two-horse wagon? We think he cannot. Such a person is certainly not within the letter of the statute, and we see nothing that would authorize us to hold that he was within its spirit. The legislature in these two acts, passed at an interval of fourteen years, saw proper to narrow the exemption in favor of such persons given by the Code of 1858, and it must be held, we think, that the act of 1899 was intended by the legislature to emphasize the fact that the restriction made in the act of 1875 was intelligently and deliberately done. It may be that in thus narrowing the exemption granted by the Code of 1858 the legislature was controlled by the fact that a wagon used for the purpose of carrying grain to mill would impose more of a burden and inflict more of wear and tear upon a turnpike than if the grain was carried on horseback. But, whatever the motive, the legislature has so provided in the act, and we know of no authority for an enlargement by the court of its scope.

The case relied upon to support the action of the trial judge was decided by the referee court in the year 1885, followed by a judgment (in 1886) pronounced by this court affirming the report of that court. This judgment was rested upon the assumption that the Code provisions referred to above became a part of the charter of this turnpike company granted in 1859-60 (Acts 1859-60, p. 147, c. 3). This view, however, we have already held to be unsound. It follows, therefore, that

Heath v. Manire.

the decision in that case cannot be relied upon as authority in the present case.

The judgment of the court below is reversed, and a judgment will be entered here for the amount of the toll, and the penalty accrued for its nonpayment, and the costs of the cause.